UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DADE DIVISION

CASE NO.

LAUREN SHAPIRO,

    Plaintiff,

v.

BRICKELL BAY CLUB CONDOMINIUM ASSOCIATION, INC.,
and ANOLAND ZANASCO.

    Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Lauren Shapiro, by and through the undersigned counsel, sue Defendants, Brickell Bay Club Condominium Association, Inc., and Anoland Zanasco, and in support thereof alleges as follows:

1. This is an action for violations of the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq*. (the "FHA"). Plaintiff alleges that Defendants discriminated against her on the basis of her disability by failing to provide a reasonable accommodation for her parking and denying her requests for accommodation in dealing with mold and water intrusion in her condominium unit.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as it arises under federal law, specifically the FHA, 42 U.S.C. § 3613.

3. Venue is proper under 28 U.S.C. § 1391(b) as this is the district in which the events giving rise to Plaintiffs' claims occurred; where the subject property is located, and Defendants reside and/or do business.

## PARTIES

4. Plaintiff, Lauren Shapiro (referred to as "Plaintiff" or "Ms. Shapiro") currently owns and resides in Unit 2517 within Brickell Bay Club Condominium Association, Inc, at 2333 Brickell Avenue, Miami, Florida 33129, a resident of Miami-Dade County, and is otherwise *sui juris*.

5. Plaintiff is a qualified person with a disability under the Fair Housing Act and 42 U.S.C. § 3602(h) because she suffers from a physical disability that substantially limits her mobility, including her ability to navigate steps, walk long distances, and maintain balance.

6. Defendant Brickell Bay Club Condominium Association, Inc. (referred to as "Association" or "Brickell Bay Club") is a Florida non-profit corporation licensed to and doing business in Miami-Dade County, that operates a condominium building located at 2333 Brickell Avenue, Miami, Florida 33129, which is the subject property of this action.

7. Defendant Anoland Zanasco (referred to as "Property Manager" or "Zanasco") is a "person" under 42 U.S.C. § 3602(d), an agent and the Licensed Community Association Manager ("LCAM") for Brickell Bay Club, responsible for managing the property and handling accommodation requests from residents.

8. Defendant, Brickell Bay Club Condominium Association, Inc, is operated by a Board of Directors, (hereinafter "BOD" or "Defendants" collectively with Defendant, "Brickell Bay Club"). These members of the Board of Directors were personally involved in each and every discriminatory act mentioned below during their tenure as Members of the

Board of Directors. As a result, each reference to Brickell Bay Club includes each member of Defendant members of the Board of Directors.

9. At all times relevant to the events' described Ernesto Inderbitzin was and is the President of the Board of Directors of Brickell Bay Club, a resident of Miami-Dade County, and is otherwise *sui juris*.

10. The unit at issue is a "dwelling" within the meaning of 42 U.S.C. § 3602(b), and "dwelling units" within the meaning of 24 C.F.R. § 100.21.

11. At all-time relevant, the individuals involved in the discriminatory actions were acting as employees and/or agents of Defendant Brickell Bay Club Condominium Association, Inc, Brickell Bay Club and Legacy is vicariously liable for their agents and employees' actions or omissions that violate the Fair Housing Act. *Meyer v. Holley*, 537 U.S. 280, 285, 123 S. Ct. 824, 154 L. Ed. 2d 753 (2003)

## **GENERAL ALLEGATIONS**

12. Plaintiff is an individual with a disability under 42 U.S.C. §3602(h). Therefore, a member of a protected class of persons whom the Fair Housing Act ("the Act") protects from unlawful discrimination because of her disability.

13. Defendant Brickell Bay Club is a condominium association that operates a 31-story bayfront building located at 2333 Brickell Avenue, Miami, Florida, 33129.

14. Defendant Zanasco was at all times relevant the Property Manager and agent of Brickell Bay Club, acting within the scope of her position managing the operations, and enforcing the declarations, covenants, rules, and regulations of the Association.

15. Ernesto Inderbitzin was at all times relevant to the events described here the president and/or agent of Brickell Bay Club, acting within the scope of his position, with regard

to managing the operations, and enforcing the declarations, covenants, rules, and regulations of the Association, and executive powers and general supervision over the affairs of the association and other officers.

16. On or around October 2021, Plaintiff purchased and moved into Unit 2517 at Brickell Bay Club, located at 2333 Brickell Avenue, Miami, Florida, 33129, which comes with one assigned parking spot, and governed by the rules and regulations of the Association.

17. Around the same time of the purchase Plaintiff rented a second parking spot to be used by family members. But in or around February 2022, after realizing that no one was using the spot, Plaintiff canceled the rental.

18. Plaintiff has been receiving ongoing medical care for orthopedic issues, including a history of knee surgeries, arthritis, and allergies.

19. But Plaintiff's condition worsened, and after three knee surgeries, she underwent a fourth surgery in September 2022, which unfortunately was not as successful as expected. As a result, she had a fifth knee surgery in May 2023.

20. Due to the severity of Plaintiff's condition, she could not get in and out of her car, so she purchased an SUV and made a second request to rent a parking spot for it. In or around November 2022, Plaintiff was assigned spot 170 for the SUV.

21. Since purchasing the unit in October 2021, Plaintiff requested a closer parking spot, but the requests became more frequent after her fourth surgery in September 2022, which was urgently needed because of complications that made walking difficult. As a result, she required a fifth knee surgery in May 2023.

22. Between July and November 2022, while undergoing renovations in the master bedroom, Plaintiff asked her contractor to hang curtains and discovered rotten wood behind

the wall. Plaintiff submitted a work order to management, which went ignored until she followed up with another email, including pictures, on November 22, 2022, along with her ongoing requests for reasonable accommodation for a closer parking space.

23. Despite this and the multiple requests already made, between November 2022 and November 2023, Plaintiff made several additional requests to Property Manager Defendant Zanasco for reasonable accommodation of a parking space closer to her unit due to her disability and severe pain while walking, as her assigned parking spot was far from her residence. Yet, despite her efforts, Plaintiff's requests still went unaddressed.

24. On or around May 15, 2023, David Sanchez, a former employee of Brickell Bay Club, observed how often Plaintiff requested a closer parking spot and how often her requests were disregarded by the Property Manager. Mr. Sanchez offered a temporary solution by allowing the valet to park Plaintiff's car.

25. This arrangement continued smoothly until September 2023, when Defendant Zanasco rescinded it without notice, leaving Plaintiff without reasonable accommodation and without access to a closer parking spot.

26. In January 2023, plaintiff's bedroom experienced flooding, with about 2 inches of water extending into the bathroom. Plaintiff began another work order, initially believing that a pipe had burst under the floor. That said, the building engineer confirmed that the source of the water was coming from outside.  It was only at this time did Plaintiff discover from neighbors that the same water intrusion issues affected her neighbors, and this was an ongoing systemic water intrusion issue impacting the entire 15 and 17 line of the building due to cracks in the façade of the building that went unaddressed for several years.

27. From November 2022 through April 2023, all communications for a status were unaddressed and closed out the work order submitted.

28. On April 19, 2023, Plaintiff emailed management to inform them of her illness which she believes was related to the mold in her unit due to the ongoing systemic water intrusion.

29. On April 27, 2023, Brickle Bay Club hired a mold remediation company. The mold remediation company recommended mold remediation due to the ongoing water intrusion.

30. From April to August 2023, again all Plaintiff's emails and requests for updates were ignored and/or unaddressed. On or around August 2023, Plaintiff repeatedly reported to management about mold in her unit, caused by ongoing water intrusion that was known to Defendants. She explained that this situation exacerbated her allergies, resulting in frequent visits to urgent care due to shortness of breath and asthma.

31. Sometime around August 2023, Brickell Bay Club made an initial attempt at repairs to the façade of the building to remediate the water intrusion issues. As a result, the building hired the mold remediation company in September 2023 to remediate the mold inside the unit. The mold remediation company discovered toxic mold under the flooring and walls and removed the flooring and most of the walls in Plaintiff's master bedroom. The mold remediation company also discovered there was recent water under the floor rendering the repair attempts to the façade unsuccessful. At that time, she also requested temporary lodging while these issues were addressed but did not receive a response.

32. At the time the valet service was rescinded in September 2023, severe retaliation began following multiple complaints about the water intrusion and requests for

accommodation due to the mold. Plaintiff approached the President of the Board, Ernesto Inderbitzin, to inform him of her accommodation request and Defendant Zanasco's decision to terminate the valet arrangement. Yet Mr. Inderbitzin refused to assist or engage with Plaintiff regarding her request.

33. On or around September 13, 2023, following a conversation with Javier Zayas-Bazan, the attorney for Brickell Bay Club, Plaintiff sent a formal request for accommodation for her parking situation:

> Hi Javier,
>
> Thank you for taking the time to speak with me today. I hope you feel better soon. As I have mentioned, since approximately January 2023, I have requested the property manager to provide a closer parking space or provide reasonable accommodations due to my disability. The property manager is well aware of my disability. Each time I made this request, she told me there weren't any closer spots available and that I can pay for valet in addition to paying for a second parking spot for a second car that I had to purchase because my primary car was too low to the ground, and I was no longer able to drive it. It was not until May 2023 that an office clerk at Brickell Bay Club, David Sanchez, was not happy with the property manager's handling of this matter and provided me with access to valet in lieu of parking the car myself. Yesterday, this offer was unilaterally rescinded by the property manager without any discussion or notice to me. My car key was sent up to my apartment and I was told I no longer can valet the car. I am requesting that reasonable accommodations be provided to me in the form of reinstating valet or an assigned spot closest to the side entrance (the only viable entrance for the upper-level outdoor parking lot).

34. On or about September 21, 2023, Plaintiff formally requested temporary lodging accommodations due to mold and her health conditions, but Defendants denied this request.

35. Due to Defendants repeatedly ignoring Plaintiff's repeated attempts to seek resolution, the lack of progress, and overall unresponsiveness, Plaintiff has engaged the undersigned to assist with the situation.

36. As such, on November 17, 2023, the undersigned sent a request for accommodation letter on behalf of Plaintiff to Javier Zayas-Bazan, legal counsel for Brickell Bay Club, but this effort also received no response from Defendants.

37. In November 2023, afterbad storm, Plaintiff contacted an emergency water remediation company the next day to address severe flooding in her unit. But when the company arrived, Defendant Zanasco did not consider the flooding an emergency and ordered the team to leave before the issue was fully resolved. This led to increased mold, further damage to Plaintiff's unit, and physical harm to her. As a result, Plaintiff had to contact the police for assistance.

38. Defendants' lack of responsiveness is not only disrespectful but also legally questionable, as such Plaintiff believes that the denial of her accommodation requests, as well as the termination of the valet parking arrangement, were in retaliation for her complaints about her disability and the water intrusion, in violation of the Fair Housing Act.

39. Up to this date, there has never been another attempt to repair the façade since the unsuccessful attempt in August 2023. The building has left Plaintiff's master bedroom uninhabitable with no walls and flooring since September 2023.

40. Further, the undue delay in responding to a request for accommodation or modification is deemed to be a constructive denial and thus a violation of the Fair Housing Act.

41. In 2008, the ADA was changed to include more people in the definition of "disabled." Conditions that only show symptoms at certain times are now included. Asthma and allergies fit this definition. The ADA protects people with asthma and allergies even if reactions or attacks happen only when triggered.

42. Under the FHA, it is unlawful to discriminate against a buyer, renter and/or "any person associated" therewith for reasons of disability, 42 U.S.C. § 3604(f)(1).

43. Discrimination includes: "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]"42 U.S.C. § 3604(f)(3)(B).

44. "Any person or entity engaging in prohibited conduct – i.e., refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person with a disability an equal opportunity to use and enjoy a dwelling – may be liable" unless they fall within the very narrow exceptions to the FHA's coverage. Neither condominium associations, nor property management companies are exempted from the FHA's requirements.

45. As a result of Defendants' actions described above, Plaintiff has suffered and continues to suffer irreparable loss and injury including, but not limited to loss of a housing opportunity, humiliation, embarrassment, emotional distress, and deprivation of Plaintiff's right to equal housing opportunities regardless of her disability.

46. By having a licensed community association manager and counsel well versed in the Fair Housing Act, Brickell Bay Club acted in deliberate indifference to Plaintiff's rights under the Fair Housing Act.

47. Defendants knew they were violating the Fair Housing Act, yet Defendants acted with deliberate disregard to Plaintiff's rights under federal and state law. As a result of Defendants' discrimination on the basis of disability, Plaintiff also suffered non-economic injuries, such as mental anguish, grievous emotional distress, embarrassment, frustration,

anxiety, humiliation, loss of capacity for the enjoyment of life, loss of personhood and civil rights, and other personal injuries resulting from Defendants' discriminatory actions.

48. Defendants' acts and/or omissions regarding Plaintiff were intentional, malicious, and exhibited wanton or reckless disregard of Plaintiff's rights and feelings due to Plaintiff's disability. Such behavior entitles Plaintiff to an additional award of punitive damages and/or exemplary damages. These losses are either permanent or continuing and Plaintiff will suffer these losses in the future.

49. Defendant's actions were in deliberate disregard of Plaintiff's federal, and state protected rights. A handicapped plaintiff proceeding under the Fair Housing Amendments Act can rely on "disparate treatment," "disparate impact" or "reasonable accommodation theory." *Douglas v. Kriegsfeld Corp.*, 884 A.2d 1109, 1128-29 (D.C. 2005); *Schwarz v. City of Treasure Island,* 544 F.3d 1201, 1218-19 (11th Cir. 2008). Here, plaintiff relies on a failure to reasonably accommodate theory to support her claims against Defendant in this matter.

50. Because of this discrimination, Plaintiff has actual damages, psychological distress, worry, frustration, and humiliation. These losses are either permanent or continuing in nature and Plaintiff will suffer these losses in the future.

51. Any other conditions precedent to the filing of this action have been satisfied or have been waived.

52. Plaintiff has retained J. Courtney Cunningham, PLLC., to represent her in this action and agreed to pay a reasonable fee for their services.

**COUNT I - FAILURE TO MAKE REASONABLE ACCOMMODATION
IN VIOLATION OF 42 U.S.C. § 3604 (f)(3) as to all Defendants**

53. Plaintiff repeats and realleges paragraphs 1 through 52 as if fully set forth above.

54. Plaintiff is a member of a protected class and aggrieved persons under 42 U.S.C. 3602(i).

55. Plaintiff requested reasonable accommodation to Brickell Bay Club because of her disability.

56. Defendants were aware of that the requested accommodation was necessary to afford Plaintiff an equal opportunity to use and enjoy the dwelling.

57. Defendants failed to respond to the request for accommodation; therefore, Defendants has constructively denied the requested accommodation. Discrimination is defined as the refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling, including public or common use areas. 42 U.S.C. § 3604(f).

58. Under the Fair Housing Act, it is unlawful to discriminate against any person in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a disability.

59. Defendants violated the FHA by failing to provide Plaintiff with reasonable accommodation in the form of a parking space closer to her unit, despite her disability and repeated requests.

60. Defendants also violated the FHA by failing to accommodate Plaintiff's request for temporary lodging during the remediation of mold and water damage that exacerbated her medical condition.

61. Defendants' refusal to engage in an interactive process to accommodate Plaintiff's disability constitutes a denial of her rights under the FHA.

62. As a direct and proximate result of Defendants' discriminatory actions, Plaintiff has suffered damages, including, but not limited to, emotional distress, inconvenience, and costs associated with her inability to use her parking space and her home due to mold.

**COUNT II – RETALIATION (42 U.S.C. § 3617) as to all Defendants**

63. Plaintiff repeats and realleges paragraphs 1 through 52 as if fully set forth above.

64. Plaintiff is a member of a protected class, being a person with a disability.

65. The Fair Housing Act, 42 U.S.C. § 3617, *et seq.*, makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise of, or on account of her or his having exercised, or on account of her or his having aided or encouraged any other person in the exercise of any fair housing right.

66. After the multiple's complaints of water intrusion, and requests to be fixed, Defendants retaliated against Plaintiff by rescinding the valet parking arrangement after she requested reasonable accommodation and complained about mold in her unit.

67. Defendants' actions constitute unlawful retaliation in violation of the Fair Housing Act.

68. As a result of Defendants' retaliation, Plaintiff has suffered damages, including emotional distress and inconvenience.

WHEREFORE, Plaintiff, Lauren Shapiro, respectfully requests that this Court enter judgment in her favor and against Defendants Brickell Bay Club Condominium Association, Inc., and Anoland Zanasco, awarding the following relief:

1. A declaratory judgment that Defendants' conduct violates the Fair Housing Act;

2. An injunction requiring Defendants to provide reasonable accommodations for Plaintiff's disability;

3. Compensatory damages, including emotional distress damages;

4. Punitive damages;

5. Attorneys' fees and costs; and

6. Any other relief the Court deems just and equitable.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted this October 29, 2024.

> By: */s/ J. Courtney Cunningham*
> J. Courtney Cunningham, Esq.
> FBN: 628166
> J. COURTNEY CUNNINGHAM, PLLC
> 8950 SW 74th Court, Suite 2201
> Miami, Florida 33156
> T: 305-351-2014
> cc@cunninghampllc.com
> legal@cunninghampllc.com
>
> *Counsel for Plaintiffs*